May it please the Court, John Merriam. Wait just for a moment. All right, you may proceed. May it please the Court, John Merriam, for appellant Dex Rubens. Merriam. Members of the panel, it seems like two salmon beating the tar out of each other on a vessel in navigable waters in a beef over wages. It seems about as maritime as it gets. I don't really know where to start. Maybe I should take questions. All right. If not, I'll move on to the issue of the NREM. The availability of relief either is punitive damages or an NREM claim against a vessel other than the one to which the vessel... Well, those latter two issues, weren't they merged into the judgment? The trial judge refused to rule on them, wanting additional facts. And I think between the stipulation between counsel, we laid out all the facts he needs. I think this could be decided as a matter of law. Certainly, it has a matter of judicial economy. I think this case might be right back up, I mean, if it is remanded. And Judge Bryan makes a ruling one way or the other, at least on the punitive damages issue. We could be right back here. I'm asking this panel to rule contrary to the... Let's go back to the jurisdictional question. It seems to me that the more it was on a boat, it was not a problem. And it was — but then we have the sort of additional factors where you have an assault of somebody who — and you have, as the judge saw it below, just a sort of ordinary assault which could have happened anywhere. I mean, it happened to have happened in the boat, but it took place on land, right? There was a fight between these two people. It had nothing to do with the particular boat he was on. He happened to be in the boat at the time, but that was sort of fortuitous. Indeed, Your Honor. But it was a fight between two seamen, and the underlying basis for the fight was over a seaman's wages. Well, now, is that clear from the record, that the fight was over wages? Or was it over the fact that threatening phone calls had been made, and one of these That could be, Your Honor, but I would suggest that's an issue of fact that should have awaited trial to be decided. Either way, it was — the threats were uttered in the — in the context of a wage dispute. So I think whether the assault was in response to those threats or whether it stemmed from the wage dispute itself is — sort of becomes the same issue. Well, aren't we stretching the line very thin to keep going back in time until we find something that's tied to maritime activity, and then saying that's sufficient to invoke maritime jurisdiction? Is there at some point that this connection, nexus, if you will, gets broken? I think there's sufficient nexus just from the fight between two seamen on a vessel in Navajo waters. Well, suppose one of these men had not been a seaman. He had — he received the threats, but he was not a man who had anything to do with maritime activity. But he comes on to the boat, and a fight ensues. Is that maritime jurisdiction at that point? I suggest it is, Your Honor. The commentators suggest the two passengers, even. But that's not what I'm suggesting as a passenger. I'm just saying this fellow shows up.  This fellow shows up. They get into a fight. Is that maritime jurisdiction? If there's a potential disruption of maritime commerce, I suggest that, yes, that is. That is also maritime jurisdiction. If that had anything to do with — And that's because one of the persons is a sailor or a seaman. Say that again, Your Honor? Maritime jurisdiction exists because one of these individuals happens to have his occupation, that of being a seaman. I would say that makes it even more maritime in nature. Even without the seaman status, if there's any potential for disruption of commerce, if there's any way this fishing boat could have been delayed in going out to catch, I think that would be maritime also. All right. I understand your position. Counsel, apparently in the stipulation, the parties agree that Mr. Gruber's complaint is not to be construed to assert any claims against any defendant for unseaworthiness or negligence under the Jones Act. Correct. Lay that out a little bit for me. What — It is not a — the employment relationship was over. So the — Mr. Gruber cannot assert Jones Act negligence or unseaworthiness because the unseaworthiness is doubly problematic because we're a different vessel than the vessel in which he was served when the wages arose. So, yes, there is no connection there. So this is an ordinary tort claim, but based on maritime jurisdiction. I think that's a better view, Your Honor. I think Judge Bryan has some hesitation in that regard, saying perhaps there was a lingering employment relationship, in which case I was asking for NREM relief to proceed NREM. That also was not addressed. I'm asking — I asked the trial judge below and I asked this panel now to clarify as a matter of law what relief is theoretically available to this man in the stipulated circumstances. Isn't that an advisory opinion if we do that? Perhaps, Your Honor. Or it could be looked at as judicial economy. If this case is remanded, it's going to be a very hotly contested issue below again. It's an advisory because we would have the case — if the case is remanded, the judge has already decided to deny summary judgment on these other issues, and you'd have to have a trial, right? That would be my — my desire. If you thought the summary judgment was — should have been granted, then there wouldn't be a trial. Well, I — There would still be a trial, actually, because the issues are just issues about relief, they're not issues about —  Exactly. What — what relief can be claimed by Mr. Gruber if there were a trial? So is this unusual in the sense that the — we're not going to avoid a trial by getting to the summary judgment question, so why don't you just have the trial? To advise the parties and the trial judge about what relief is proper in this situation. This is a rather unusual situation. Would you look very briefly, then, to tell us why you think summary judgment should be granted? Why summary judgment should be granted? Because the facts have been laid out by stipulation. It's in the record at — excerpt from Record 24 through 26. I thought they were inadequate. So the question is, why was he wrong about that? Why would I want what you're asking? Why was he wrong in saying that the facts were inadequate to establish what you needed to establish? I can't imagine what additional facts he'd need on these issues. Why was he wrong? I left my hearing aids at home this morning, Your Honor. I'm sorry. He said what additional facts he needed. Did he not? You'll have to correct me. I don't recall him saying that — he said in general he needed additional facts, but I don't recall him specifying exactly what facts he needed that weren't laid out in the stipulation. Counsel, why don't we hear from the other side and observe the rest of your time? Thank you, Your Honor. Thank you. Good morning, Your Honors. I have a few comments I would like to make. Would you introduce yourself for the record, please? Philip Sanford. Mr. Sanford? I'd like to make a few comments just to focus your attention on what we think is important in this case, factually and legally, and then allow lots more. Well, just to paraphrase what Mr. Merriam said, what could be more maritime than two seamen fighting on a ship in waters? I'm sure it happens every day. The question, of course, would be whether it relates to anything traditionally maritime and whether the uniformity of maritime law is implicated, because two seamen, people who happen to go to sea, also happen to have a battle on a boat one night. Obviously, if they're fighting over a woman, that's not traditional maritime activity. Obviously, if they're fighting over poker debts, that's not traditional maritime activity. There are many reasons that two seamen ---- All right. But in this instance, they were fighting over maritime wages. And in this instance, those maritime wages could have been pursued in State court. They could have been pursued under a government federal statute. They were fighting over maritime wages. I question that. And I think Judge Bryant did, too. And I think the issue he raised was something of a Paul Scraff analysis. There was a wage dispute at one point. There's no question about it. How long in time can you argue that everything that happens thereafter must be related to that? Well, it was certainly related. I mean, I think you're right about the fact that there's a Paul Scraff problem here at some point. But whether it was related is really not in doubt. The question is, at what point would you cut the causation line? That would be our point, yes, and not just for temporal concerns. I mean, at some point, you've simply gone beyond what legitimately flows from a causation analysis, a wage dispute, and what has simply become something else. It just does not rise to the level of Federal jurisdiction. And I think the point becomes clear when you ask this question. Now, if you affirm Judge Bryant's decision, then Mr. Gruber's going to go down and pursue the action he has already filed in Grace Harbor Superior Court. Do you have any case law that says that a physical fight between two seamen in navigable waters is not maritime jurisdiction? They were cited in the brief, Your Honor. There was, in particular, a case out of Hawaii where two seamen did exactly that. They were involved in a physical altercation, and the question was raised. They were on the dock, weren't they, rather than on the boat? You know, that's true. But I think, interestingly, the case law wouldn't make any difference. They were both employed as seamen at the time on a boat, and they were over navigable waters. There was wood under their feet in the sense that it was a dock instead of a deck. But as a matter of the first question, the first prong of the test, that wouldn't make any difference. They happened over navigable waters. But if Mr. Gruber goes down to Grace Harbor Superior Court and pursues this case and gets a judgment, it is inconceivable that that judgment could possibly, no matter what it is, implicate uniformity of federal maritime law. It simply can't. And that is because there are parallel wage statutes under the federal U.S. Code and Washington State and Oregon, and the case law has always said a seaman can pursue either one or both. They just do not implicate the uniformity of federal maritime law. The wage dispute doesn't implicate the uniformity of maritime law. The battle Mr. Gruber wants to argue is directly approximately related and caused by a wage dispute cannot implicate the uniformity of maritime law, even if you assume the causal connection is there, which it's not. It just simply isn't. Mr. Gruber said in his very first message to Mr. Lessman, I'll have the marshal tie up your boat. He said some other things. I'm not going to use that language here. We don't need it. He knew darn well what to do if he had a wage dispute. You have a right to go after the boat. Tie it up. It's security. And that sounds like a maritime dispute. It absolutely is. What's that got to do with those threatening phone messages? What has that got to do with showing up at the dock and threatening Mr. Lessman in front of a 5-year-old grandson with physical injury? That's just criminal behavior. Those phone messages are just criminal behavior. If Mr. Gruber had followed up on the threats and actually gone out and found Mr. Lessman's truck and slashed his tires, would we be saying that's maritime as well because it all relates back to a wage dispute he said he had? And if Mr. Lessman had retaliated and found Mr. Gruber's property and thrown it in the water off the deck of his boat, would we be saying that that is maritime jurisdiction as well because it all somehow evolves from what Mr. Gruber calls a wage dispute? There's a way to go about following up on a wage dispute, and then there's just criminal behavior. There's got to be. It just becomes too tenuous at some point. Which is the Hawaii case that you were referring to? I'm sorry, Your Honor. I had to grab that brief. I don't have it.  Okay. It's a district court case. Yes. All right. I just — if we were to disagree on a jurisdictional question, do we reach the summary judgment issue? I'm sorry, Your Honor. I'm having trouble. If we were to disagree on the jurisdictional question, do we reach the summary judgment question? No. Okay. Why? I think there are questions of fact that either the trier of fact has to resolve. Which are? Who assaulted whom? All right. In the complaint? Well, no. But as I understand it, the summary judgment issues that we're talking about are not overall summary judgment. They're summary judgment with regard to the availability of punitive damages in in-rim jurisdiction. I'm sorry. I wasn't following you. Well, that's the only issues that have been determined below, right, as to summary judgment. That's what summary judgment was asked for on. There was a motion for summary judgment as to the availability of the vessel to satisfy this claim. Right. And the Court did not grant summary judgment. Right. And as to punitive damages. You know, I frankly don't remember that, but I'm sure it was — There was a second issue. Okay. So whatever they were, there was that we have a final judgment. We could reach the summary judgment issues, those issues, as to whether it was proper as decisions were proper that we had to be a part of those questions. Should we? Could we? So on. I don't think you should. I'm not sure whether you could. I think those issues are fact-driven, and the judge — Okay. You're not prepared to tell us why they're fact-driven, what the facts are. The facts concerning in-rim jurisdiction, I think, are before you. It is — I've never understood why Judge Bryan would not reach the issue whether or not the in-rim claim was available. You asked for summary judgment. I did. Right? But he did grant the motion regarding jurisdiction. I'm not sure there's a distinction between the two. It is the very same analysis either way. Counsel, this is significant with respect to the maritime jurisdiction issue that the wage dispute, which was obviously part of the motivation for the fight, was settled. Well, I think it's — it obviously is important. If there were still a wage claim here, then that would provide Federal jurisdiction. There are Federal statutes. But not under maritime? Or under maritime? I'm not sure I understand your response. Mr. Gruber started this action with two claims. He wanted compensation, general maritime negligence. Right. And he wanted money in the form of wages. Right. The wages part was settled. Once the wages part was settled, then it was our position there was no longer any basis for Federal jurisdiction. But was the Federal jurisdiction, while the wage claim was still open, maritime jurisdiction? It was Federal jurisdiction. Federal subject matter, not maritime. Federal subject matter, but not maritime. In your view. In my view, it was maritime. I don't think there's any getting around that. Well, it was maritime. Well, I think one could assert maritime jurisdiction. Sure. But wasn't there maritime jurisdiction at the beginning? The assertion was not made. Why was it extinguished, in your view, because of the settlement? Because the only allegation of Federal, excuse me, only allegation of Federal jurisdiction was the invocation of a Federal statute concerning Siemens wages. And so? So there's jurisdiction at the outset, and then what? I'm making a distinction between an allegation that there is Federal maritime jurisdiction over the wage claim as compared to subject matter jurisdiction. I just wanted to be clear in answering that question. But, yes, based on the assertion of Federal question jurisdiction, there was initially appropriate Federal jurisdiction because of the wage claim. And there still is. So where we are then is that, at worst, this claim would be decided, could be decided as a penchant State claim under? I think that's where we started, yes. So we're not talking about whether the case goes away. We're only talking about what law governs it? Only talking about what? What law governs it? What would justify dismissal of this case at this point? There is no Federal jurisdiction over that claim. But there was originally. There was not. There was Federal jurisdiction over a wage claim. Okay. And there was penchant jurisdiction over the assault claim. So your understanding of what happened is that the district court here refused to exercise its penchant jurisdiction? No. The district court, by the time the motion was filed, no longer had a wage claim before it, no longer had assertion of Federal question jurisdiction. Right. It had only an assertion of general maritime jurisdiction. But that's not how jurisdiction works with regard to pendant and supplemental claims. If there's jurisdiction at the outset, the judge can decide to exercise supplemental jurisdiction over whatever else is there. He could also decide not to, but he didn't look at it that way. Correct. He did not look at it that way. Thank you, counsel. Your time has expired. Mr. Merriam, you have some reserved time. Mr. Merriam, I'd like to ask you the same question. What's the significance of the wage claim having been settled on this issue? I don't think there is any significance. I think both claims are maritime in nature, both the wages and the assault. Doubly so, since regardless of how the assault is characterized, at least what started, the motivation for it starting was over this beef over wages. Members of the panel, I just have one additional point to make. Since I submitted additional authority, I've noticed it came to my attention that another treatise criticized the decision below, and that's the law of supplement was just issued a couple months ago. Well, counsel, you should submit another 28-J letter then or a specific. Do that afterwards, Your Honor? Yes. Be sure and serve three copies to the court and a copy on your opposing counsel. Thank you, Your Honor. I'll do that. I don't have anything further unless the panel has more questions. No further questions? Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted for decision.
judges: O'scannlain, Berzon, Haddon